[Cite as *State v. Simpson*, 2018-Ohio-328.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                             Court of Appeals No. L-16-1175

     Appellee                                        Trial Court No. CR0201502696

v.

Kerry Drake Simpson                              **DECISION AND JUDGMENT**

     Appellant                                       Decided:  January 26, 2018

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Claudia A. Ford, Assistant Prosecuting Attorney, for appellee.

James J. Popil, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

**{¶ 1}** Appellant, Kerry Simpson, appeals from the July 12, 2016 judgment of the
Lucas County Court of Common Pleas convicting him of rape, a violation of R.C.
2907.02(A)(2) and (B), and compelling prostitution, a violation of R.C. 2907.21(A)(1)
and (B), with an enhancement that the victim was less than 16 years of age, and
sentencing him to a mandatory term of nine years and six years respectively, to be served
consecutively.  Upon consideration of the assignment of error, we affirm.

**{¶ 2}** Appellant asserts the following single assignment of error:

Appellant's convictions were not supported by the manifest weight of the evidence.

**{¶ 3}** A challenge to the weight of the evidence questions whether a greater amount of credible evidence was admitted to support the conviction than acquittal. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). When weighing the evidence, the court of appeals must consider whether the evidence in a case is conflicting or where reasonable minds might differ as to the inferences to be drawn from it, consider the weight of the evidence, and consider the credibility of the witnesses to determine if "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, fn. 3, 461 N.E.2d 1273 (1984), quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978).

**{¶ 4}** At trial J.W., the victim, testified as follows. In 2005, she was fifteen years old when she met appellant, whom J.W. knew was 40 years old, through S.S., an elementary school friend. At that time, J.W. was addicted to crack cocaine, and appellant initially supplied her and S.S. with crack cocaine for free. Later that year, she moved in

2.

with appellant without her mother's knowledge. Afterward, she did not feel free to leave because she wanted the drugs and was terrified of appellant. He would not allow her to leave the apartment without supervision.

{¶ 5} She recalled once when appellant became very angry at her and yanked her hair because she had used a neighbor's phone to report that S.S. had overdosed on drugs. Appellant took her away while the police responded to the call because he was afraid he would get in trouble. S.S. confirmed that she had once overdosed on drugs.

{¶ 6} J.W. testified that appellant forced J.W. and S.S. to prostitute themselves at his apartment or on "dates" he arranged. J.W. and S.S. were forced to give appellant the money they were paid and he supplied them with crack cocaine. J.W. recalled numerous times when she refused to comply with appellant's demands or had not returned home soon enough after an encounter and he had hit her with his hands, a bat, or a belt. She also saw him hit S.S. once and other women at the apartment numerous times. Appellant would also force J.W. to hit S.S.

{¶ 7} S.S., who was serving time for complicity to commit aggravated robbery and murder, also testified at trial and confirmed J.W.'s testimony. S.S. admitted she had been a 13-year-old runaway and met appellant when she purchased drugs from him. She introduced J.W. to appellant, who supplied them with crack cocaine and later forced them to prostitute themselves and give him the money in order to get drugs. S.S. further testified that while appellant would arrange sexual encounters or send S.S. out to find her own encounters, he never let J.W. leave the apartment alone. He also made S.S. have sex

3.

with drug dealers four or five times in order to obtain crack cocaine. S.S. complied with appellant's demands because she wanted a place to live and access to the drugs. S.S. testified appellant forced her to have sex a few times and she saw him having sex with J.W. who appeared uncomfortable. S.S. was afraid of appellant because she had seen him become violent and hit J.W. with his hand and a belt. He also manipulated them into hitting each other to destroy their friendship. S.S. also saw J.W.'s mother at the apartment using drugs with J.W. and appellant.

{¶ 8} N.S., who had a prior conviction for making a false statement relating to her drug use in 2005, testified that she used crack cocaine at appellant's house in 2005 and sometimes slept there. She confirmed J.W. lived at the apartment and usually hid in the bedroom. N.S. saw J.W. use crack cocaine at the apartment and saw J.W. leave the house four or five times and return with money she gave appellant. N.S. also saw appellant implicitly threaten J.W. and other girls by wearing a belt around his neck and giving them a look. She saw one girl who had been beaten, but did not know who had beat her.

{¶ 9} J.W. admitted that she had consensual sex with appellant but sometimes had complied to avoid being hit or because he forced her. She recalled the turning point event that led to her escape from appellant. On the evening of September 9, 2005, appellant became angry and beat her repeatedly with a bat because he thought she had not properly responded to his friend. She recalled deciding that night that she had to get away from him. The next morning, appellant wanted J.W. to have sex with him and when she objected, he told her that she would do whatever he told her to do. He forced to

4.

have vaginal and anal sex with him, causing her pain and injury and to become hysterical. Afterward, he sent her out with a man who also wanted to have anal sex. She jumped out of the car and ran to her grandmother's home before going to a hospital, where she stayed until being discharged the following day.

{¶ 10} J.W.'s medical records were introduced into evidence. An analysis of the rape kit was analyzed by the Bureau of Criminal Investigations ("BCI"). The BCI found DNA from a vaginal swab that indicated a match to appellant's DNA at a ratio of 1:536,800 people. While the DNA taken from a fabric sample and an anal swab indicated the presence of a male's DNA, there was insufficient genetic material to identify or exclude a particular source. Photographs of J.W.'s bruising were also admitted, which J.W. testified were caused by being hit with the bat. The records also documented numerous vaginal and anal tears. The assault history completed at the hospital indicated that the assault had occurred at 5:30 p.m. on September 10, 2005, but the report was prepared at 2330 hours on September 10, 2005. An officer who was called to investigate the matter testified that she took J.W.'s statement that day and took possession of the rape kit, which was secured in the policy department's property room.

{¶ 11} J.W. testified she did not return to appellant after these events, but she would not cooperate with the prosecution of appellant at that time because she was afraid of him. She asserted she returned home to live with her mother who had met appellant once. Appellant had previously threatened to kill her family if she did not return from her prostitution calls. J.W. also testified she never spoke to S.S. again and saw appellant

5.

once four years later. S.S. also testified that she saw J.W. several times after S.S. recovered from overdosing and met appellant through J.W. a few times and hung out with appellant at a club once. S.S. did not clarify the time period when these meetings occurred.

{¶ 12} The Toledo police detective began his investigation of the case in early 2015 with an untested rape kit obtained from J.W. in 2005. He spoke with the victim and other witnesses. J.W. testified that she finally agreed to cooperate with the prosecution in 2015 to prevent another girl from being harmed by appellant. The detective identified appellant as the suspect and found him in Mississippi. After appellant was brought back to Toledo, the detective interviewed appellant and obtained DNA evidence from him. He denied the rape accusation, but admitted only to having had vaginal sex with J.W., without knowledge of her age. Initially, he denied prostitution was occurring out of his apartment, but he later admitted J.W. and the other women were prostitutes who paid their own way.

{¶ 13} The detective also testified that he listened to appellant's telephone conversation while he was held in custody. In a three-way call appellant made to keep the phone number private, he spoke to "Mike" and inquired about Mike's ability to locate J.W. at area women's shelters. The detective testified defendants sometimes attempt to intimidate or pay-off victims to get them to drop their allegations. A recording of the call was played for the jury.

6.

**{¶ 14}** Appellant argues in his sole assignment of error that J.W.'s testimony was not credible. He asserts the jury was inflamed by the nature of the charges and failed to fairly weigh the evidence because it found him guilty. Appellant identified the evidence which he believed supported his argument. However, he did not include references to the transcript pages and misstates the evidence that was admitted. For this reason, appellee argues we should disregard appellant's assignment of error.

**{¶ 15}** Any statement of fact made in connection with the assignment of error must be supported by references to the pages within the document that is part of the record. App.R. 16(A)(6) and (D). If a party fails to make references to the record to support their argument, the appellate court has the discretion to disregard the assignment of error. App.R. 12(A)(2); *State v. Peagler*, 76 Ohio St.3d 496, 499, 668 N.E.2d 489 (1996); *Hawley v. Ritley*, 35 Ohio St.3d 157, 159, 519 N.E.2d 390 (1988), citing *Uncapher v. Baltimore & Ohio RR. Co.*, 127 Ohio St. 351, 356, 188 N.E. 553 (1933). While we could disregard appellant's assignment of error, we will consider the weight of the evidence assignment of error but without consideration of appellant's summation of the evidence.

**{¶ 16}** Regarding the rape charge, appellee was required to prove that appellant engaged in sexual conduct with J.W. by purposely compelling J.W. to submit by force or threat of force. R.C. 2907.02(A)(2). At trial, J.W. specifically recalled an evening when appellant had beaten her with a bat and her injuries were evidenced by photographs taken at the hospital the next day. The next morning, J.W. testified appellant forced her to have

7.

vaginal and anal sex. The vaginal sex was confirmed by DNA testing. The anal testing was inconclusive, although the sample indicated foreign DNA which could have come from appellant. While the hospital records reported the attack occurred on September 10 at 5:30 p.m., rather than the evening of September 9, it was the jury's role to determine if there was an error in the record and weigh the credibility of J.W. Furthermore, it is within the province of the jury to consider whether J.W.'s admission that she saw appellant years later and S.S.'s testimony that she met appellant again "through" J.W. discredited J.W.'s credibility.

{¶ 17} Regarding the charge of compelling prostitution, appellee was required to prove that appellant knowingly compelled J.W. to engage in sexual activity for hire. R.C. 2907.21(A)(1). Subsection (B) further provides that

the element "compel" does not require that the compulsion be openly displayed or physically exerted. The element "compel" has been established if the state proves that the victim's will was overcome by force, fear, duress, or intimidation.

{¶ 18} Appellant admitted that J.W. was a prostitute and there was sufficient evidence upon which a jury could have found that appellant compelled J.W. to prostitute herself. J.W. testified appellant forced her to prostitute herself in order to receive drugs and out of fear. Two other young women also testified that appellant required J.W. to prostitute herself. The compulsion element was established by the fact that appellant was 40 years old and J.W. was 15; appellant supplied J.W. with drugs; appellant kept J.W.

8.

confined to his apartment except when out on a call; appellant threatened J.W. by carrying a belt around his neck, hitting her, raping her, and threatening her family; and appellant attempted to find J.W. after the charges against him were filed.

{¶ 19} We conclude the jury did not clearly lose its way in weighing the evidence and determining the credibility of the witnesses.  The findings of guilt were not contrary to the manifest weight of the evidence.  Therefore, we find appellant's sole assignment of error not well-taken.

{¶ 20} Having found that the trial court did not commit error prejudicial to appellant and that substantial justice has been done, the judgment of the Lucas County Court of Common Pleas is affirmed.  Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                            _____
JUDGE

Arlene Singer, J.        

James D. Jensen, J.                    _____
JUDGE

CONCUR.

_____
JUDGE